# United States Bankruptcy Appellate Panel

# For the Eighth Circuit

———————————

No. 19-6016

———————————————

In re: Ruby Jeane Sawyers

*Debtor*

------------------------------

David G. Waltrip, LLC

*Creditor - Appellant*

v.

Ruby Jeane Sawyers

*Debtor - Appellee*

————————

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: November 5, 2019
Filed: December 19, 2019

————————

Before SALADINO, Chief Judge, NAIL and DOW, Bankruptcy Judges.

————————

DOW, Bankruptcy Judge

David Waltrip ("Waltrip") appeals the order of the Bankruptcy Court[1] granting a motion by Ruby Sawyers ("Debtor") to avoid a judicial lien. We have jurisdiction over this appeal. *See* 28 U.S.C. §158(b). For the reasons that follow, we affirm.

This is a dispute between the Debtor and Waltrip, who held a judicial lien ("Judicial Lien") against the Debtor's primary place of residence (the "Property"). The Property suffered significant fire damage prior to the bankruptcy filing, and the insurance proceeds were paid to the Debtor. The Property was not restored during the bankruptcy proceeding. The Trustee made no distributions and abandoned all assets, and the case was closed. After receiving notice of a sheriff's sale of the Property, the Debtor reopened the case and instituted a lien avoidance action. The bankruptcy court granted the Debtor's motion for summary judgment and avoided the Judicial Lien, valuing the Property as of the date of the filing of the petition and rejecting Waltrip's position that the value of the Property should be enhanced by the amount of the insurance proceeds. Waltrip appealed.

---

[1] The Honorable Charles E. Rendlen, III, United States Bankruptcy Judge for the Eastern District of Missouri.

## STANDARD OF REVIEW

We review a bankruptcy court's grant of summary judgment *de novo*. *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011)(citing *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010). We will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We may affirm on any basis supported by the record." *Seaver v. New Buffalo Auto Sales, LLC* (*In re Hecker*), 459 B.R. 6, 10-11 (8th Cir. BAP 2011). Here we review *de novo* whether the bankruptcy court's conclusions interpreting the relevant statutes and applying them to the undisputed facts are correct. *Fisette v. Keller* (*In re Fisette*), 455 B.R. 177, 180 (8th Cir. BAP 2011).

We review a bankruptcy court's findings of fact for clear error. *In re Potts*, 421 B.R. 518, 521 (8th Cir. BAP 2010). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948).

## FACTUAL BACKGROUND

The Debtor filed her Chapter 7 petition in February, 2017. Waltrip was a creditor by virtue of a prepetition consent judgment in the amount of $256,739.31 entered in a civil action. The judgment constituted a judicial lien. The Debtor

3

claimed her homestead exemption of $15,000 pursuant to RSMo §513.475. There were no objections to the exemption.

Prior to the bankruptcy filing, a fire caused significant damage to the Property. The Debtor was the named insured under a homeowner's policy and was paid $132,392.99 for the purpose of repairing and restoring the Property. Waltrip was not a loss payee under the policy, and his Judicial Lien did not extend to the insurance proceeds.

The Trustee filed a Report of No Distribution abandoning all assets; no objection was filed. The Debtor received her discharge, and the case was closed. The Property was later repaired and restored using the insurance proceeds. An appraisal valued it between $95,000 and $103,640 in fully-restored condition, as opposed to between $3,000 and $6,000 on the petition date.

Waltrip later instituted a sheriff's execution sale on the Property. On the day before the sale, the Debtor filed an emergency motion to reopen her case and a motion to avoid Waltrip's judicial lien pursuant to §522(f). The case was reopened, and the parties filed competing motions for summary judgment.[2] The parties

---

[2] We note that the Debtor filed her original motions to reopen the case and to avoid the lien on April 18, 2018, and the sheriff's sale occurred on the following day. The Debtor filed her amended motions on April 26, 2018. On May 1, 2018, the bankruptcy court entered an order granting the motion to reopen the case. Accordingly, the Debtor did not own the Property when she proceeded with the avoidance action. However, no party raised any issue as to the effect of the sale on the Debtor's ability to avoid the lien. So, we decline to address it in this appeal.

4

stipulated that the Judicial Lien met the criteria for avoidance and that the Debtor could avoid it to the extent it impaired her exemptions.

The bankruptcy court denied Waltrip's motion, and granted the Debtor's summary judgment motion and motion to avoid judicial lien. In its Order, the bankruptcy court determined that 1) laches did not apply because the Debtor's delay was not unreasonable and Waltrip did not demonstrate prejudice, 2) the value of real estate is fixed on the date the petition is filed, and thus the pre-restoration value of the Property was the appropriate value to use in the avoidance analysis, 3) there is no case law supporting the theory that insurance proceeds can be added to the value of damaged real estate for the purposes of determining value for judicial lien avoidance, and 4) there is no case law that indicates that appreciation in an abandoned asset constitutes a windfall to the debtor. The court did, however, give Waltrip a timeframe within which to file a pleading to request reimbursement of fees and costs associated with the sheriff's sale, but Waltrip did not do so.

Waltrip makes four main arguments in this appeal. First, he contends that the value of the Property on the petition date should be comprised of the insurance proceeds together with the damaged home. Put another way, the bankruptcy court should have used the post-restoration value of the Property in its avoidance analysis rather than the pre-restoration value. Secondly, he argues that depriving him of his right to his Judicial Lien after the Debtor converted the insurance proceeds to equity

5

resulted in an impermissible windfall in contravention of Missouri's equitable principles and those embedded in the Bankruptcy Code. Next, Waltrip asserts that the Debtor's delay in exercising her remedies was deliberate, and she was therefore unjustly enriched at the expense of her creditors. Finally, Waltrip argues that, as a condition precedent to reopening the case or avoiding the Judicial Lien, he should have been paid the costs and expenses he incurred in connection with the sheriff's sale.

The Debtor contends that the bankruptcy court was correct in finding that the appropriate date for purposes of determining the value of the Property was the petition date, and the pre-restoration value was appropriate because it represents what a willing buyer would pay a willing seller for the Property on that date. She also argues that no legal authority exists under Missouri law or bankruptcy law which supports the substitution of insurance proceeds for damaged or destroyed property in the context of judicial lien avoidance. The Debtor also argues that there is no authority that supports the view that post-petition appreciation of real property results in a windfall for a debtor. Next, the Debtor asserts that laches does not apply in this case because the Debtor did not unreasonably delay in moving to avoid the Judicial Lien, and Waltrip was not unduly prejudiced. Finally, the Debtor points out that even though there is no binding legal authority that requires the payment of Waltrip's expenses related to the execution sale, the bankruptcy court afforded

Waltrip the opportunity to seek reimbursement, and he failed to avail himself of that opportunity within the court-imposed deadline.

## DISCUSSION

In general, the cases on which Waltrip relies involve the determination of the respective rights of parties in two situations: when the transaction in question is based on a contract (*e.g.,* mortgage, lease), or when the property in question is converted from one form to another (*e.g.,* foreclosure sale). As explained below, the cases are distinguishable and inapplicable.

Waltrip asserted that Missouri's view is that the injured property and the sum received for the injury "stand together," citing *Graves v. Stanton*, 621 S.W. 2d 524, 528 (Mo. App. 1981). While the *Graves* court did make such a statement, the context in which it was made was not the valuation of property for judicial lien purposes. The issue there was the entitlement to proceeds of an insurance policy between a lessor and lessee of a mobile home when the contract did not provide the answer. The property was destroyed by fire, and only a part of the insurance proceeds was used for repairs. Given that the lessee had exercised his option to buy, the question arose as to who would be entitled to the unexpended insurance money. The court found that the subject of the contract between the parties was the mobile home, or in case of its destruction, the insurance proceeds. It therefore ruled in favor

of the lessee, reasoning that "[t]his is a suit in equity, and the only object we have is to compel the doing of such equity as grows out of the contract." *Id.* (citations omitted). There is no contract between the parties in this case.

Waltrip also cited *Skelly Oil Co. v. Ashmore*, 365 S.W.2d 582 (Mo. 1963) to support his position that "Missouri's Supreme Court has determined that insurance proceeds are a substitute for the property destroyed." *Skelly Oil* makes no such blanket statement as to the definition of a property interest under Missouri law. The case discusses the apportionment of risk of loss in the absence of a contractual determination, and the enforceability of a contract when the subject property has been damaged. The court's position that the vendee was entitled to enforce the contract of sale with the insurance proceeds substituted for the destroyed building was tangential to the holding, and certainly not a mandate: "We see no inequity to defendants in such enforcement since they will receive the full amount ($20,000) for which they contracted to sell the property." *Id.* at 589.

Waltrip cited several other cases to boost his argument that Missouri recognizes money as a substitute for property. None has to do with the valuation of property in the context of a judicial lien. *See, e.g., Grand Teton Mountain Invs., LLC v. Beach Props., LLC*, 385 S.W.3d 499 (Mo. App. 2012)(a foreclosure sale surplus stands in place of the foreclosed property). In fact, in two of the cases, the mention of a monetary equivalent representing lost property is only remotely related

8

to the issue before the court, and tenuous at best. *See State ex rel. Phoenix Mut. Life Ins. v. Harris,* 121 S.W.2d 141, 146 (Mo. 1938)(involving the issue of service of process on licensed foreign insurance companies); *Ross v. Kendall*, 81 S.W. 1107 (Mo. 1904)(involving a judgment of condemnation).

Waltrip then argued that this concept is recognized in bankruptcy law. Again, the cases on which Waltrip relied do not make a determination as to the valuation of a property interest in an insurance policy or proceeds that would logically apply to the analysis of lien avoidance under §522(f). *See, e.g., In re Burns*, 482 B.R. 164 (Bankr. E.D.La. 2012)(relying on Louisiana law to hold that proceeds representing prepetition wages lost as a result of debtor's medical condition constituted exempt earnings); *In re Dezonia*, 347 B.R. 920 (Bankr. M.D.Fla. 2006)(applying Florida exemption law to hold that debtor was entitled to homestead exemption in surplus proceeds from foreclosure sale); *In re Swift*, 129 F. 3d 792 (5th Cir. 1997)(applying Texas exemption provision to hold that a cause of action to replace a lost retirement account is exempt). One example cited by Waltrip, *In re Crystian*, 197 B.R. 803 (Bankr. W.D. Pa. 1996), relates to a debtor's ability to cram down a mortgage, and is centered on the language of the covenants in the mortgage documents. Waltrip suggested that its holding can be extended to a lien avoidance action. The court in *Crystian* examined the issue of whether a covenant in a mortgage requiring the debtor to maintain hazard insurance on the residence created additional security for

9

purposes of cram down, and held that it did not – the insurance was merely an element of adequate protection, and therefore, the mortgage could not be modified through the plan. There was no indication that the bankruptcy court's recognition of the hazard insurance as the money equivalent of the improvements in the context of §§1123(b)(5) or 1322(b)(2) applies in the context of lien avoidance. Furthermore, the resolution of the issues here does not hinge on a contract. Waltrip also cited *In re Mateer*, 525 B.R. 559 (Bankr. D. Mass. 2015). The issue in *Mateer*, however, was whether the debtor was entitled to claim a homestead exemption in his home (which had been damaged by a storm) and insurance proceeds under Massachusetts law. The debtor had failed to disclose the storm damage or the insurance proceeds in his schedules or at his §341 meeting, so the opinion focuses on the effect, if any, that concealment has on an exemption claim. Like the other cases on which Waltrip relied, this one has nothing to do with the valuation of property in a lien avoidance context.

The case of *In re Thigpen*, 374 B.R. 374 (Bankr. S.D. Ga. 2007), was in fact decided in the context of avoiding a judicial lien. The debtors in *Thigpen* owned real estate that was secured by a mortgage and encumbered by a prepetition judicial lien. During the bankruptcy proceeding, the debtors did not claim an exemption or seek to avoid the judicial lien. The debtors received a discharge and the case was closed. When the judicial lienholder instituted a foreclosure action, the debtors

obtained an order reopening the case and moved to avoid the judicial lien. The lienholder urged the court to use the current value of the property rather than the value on the date of filing because the property had appreciated in excess of the maximum exemption amount and the debtors had paid off the first mortgage. The court refused, concluding that the petition date was the proper date for assessing the property's value for the avoidance action, adopting the position of numerous courts around the country, and recognizing the intent behind §522(f): to freeze the relative rights of the parties as of the date of the petition. This is also consistent with §522(a)(2) which defines "value" as the "fair market value as of the date of the filing of the petition…."

The use of the pre-restoration date to determine value rather than the post-restoration date is not only grounded in law, but simply makes sense. Suppose, for example, that before a debtor files for bankruptcy, her property is destroyed by a fire. The debtor collects the insurance proceeds. If she were to sell the property at this point, she would only receive the fair market value of the property, *i.e.,* the value of the "bricks and sticks." It stands to reason that a willing buyer would only pay for the property as it existed on that date, without taking the insurance proceeds into account. Similarly, if Waltrip had foreclosed on the Judicial Lien before the Debtor filed for bankruptcy, but after the fire, Waltrip would have received the value of the

11

Property as it existed on the sale date, in its pre-restoration condition without taking the insurance proceeds into account.

Waltrip's argument that the avoidance of the Judicial Lien constituted a windfall to the Debtor is made by analogy. Waltrip begins by citing RSMo §525.010 and Rule 90.01(d), both of which deal with garnishment of insurance proceeds. The analogy is not persuasive. Waltrip does not have a lien on the insurance proceeds in this case. Why it is relevant that he might have the right as a judgment creditor to garnish the proceeds is not clear.

Next, Waltrip relies on *Petrie v. LeVan*, 799 S.W. 2d 632 (Mo. App. 1990), to support his argument that depriving him of his Judicial Lien after the Debtor converted the insurance proceeds to equity would contravene Missouri's equitable principle against double recovery. *Petrie* is a case of unjust enrichment. It involved a breach of contract and conversion action against a vendor of property after the vendor retained insurance proceeds for damage to the property that occurred the night before the closing. The right to restitution for unjust enrichment presupposes that the defendant was enriched by the receipt of a benefit, that the enrichment was at the expense of the plaintiff, and that it would be unjust to allow the defendant to retain the benefit. *Id.* at 635. The court in *Petrie* found that each element was satisfied, and concluded: "If [the defendant] may keep the proceeds of the insurance and also the full purchase price, he has a windfall. [The defendant] is compensated

12

for that which he did not lose and the [plaintiffs] pay for that which they did not receive." *Id*. at 636. That is not the case here. The elements of unjust enrichment were not satisfied because Waltrip did not confer a benefit on the Debtor to which she was not entitled. The Debtor was the rightful owner of the insurance proceeds as loss payee under the policy. Furthermore, Missouri law on that question is not relevant to lien avoidance under the Bankruptcy Code.

Waltrip cited to other instances where a debtor manipulated the date of the bankruptcy filing such that a windfall was created for the debtor at the expense of the creditors. *See, e.g., In re Burival*, 406 B.R. 548 (8th Cir. BAP 2009)(discussing a debtor's obligations under an unexpired lease of nonresidential real property and expressing concern that debtor could create a windfall by filing for bankruptcy the day after rent is due); *In re Crownover*, 43 B.R. 22 (Bankr. E.D. Mo. 1984)(to allow debtor to receive insurance proceeds on the theory that they represented "proceeds" of her promissory note and deed of trust would produce an undue windfall). We agree with the bankruptcy court that the evidence did not establish that the Debtor engaged in any such manipulation. For example, the Debtor could have manipulated the system by filing the avoidance action the day after the bankruptcy closed, but she did not; she filed it instead, appropriately, immediately after she learned of the sheriff's sale.

Notably, the Trustee abandoned the Property and made no effort to administer the insurance proceeds. As the bankruptcy court noted in its Order, Waltrip cited no cases holding that appreciation in an abandoned asset constitutes a windfall to the debtor. Moreover, here, the increased value of the property results not from appreciation due to market forces, but repairs effected by the application of funds owned by Debtor in which Waltrip had no interest. We do not disagree with the bankruptcy court's conclusion that the avoidance of the Judicial Lien did not create a windfall for the Debtor. In fact, the converse could be true. Using the post-restoration value of the Property for purposes of avoiding the Judicial Lien would create a windfall in favor of Waltrip because it would allow him to recover the value of the Property with enhancements that did not exist on either the date of the petition or the date of the judgment.

Although Waltrip did not mention laches by name in this appeal, he is essentially making the argument that the doctrine applies. He asserts that the Debtor made a conscious choice to delay the filing of the avoidance action so she could retain all the equity in her home at the expense of her creditors. Laches consists of two elements: 1) unreasonable delay in asserting one's rights, and 2) a resulting prejudice to the defending party. *Strawn v. Missouri State Board of Education*, 210 F.3d 954, 956-57 n.3 (8th Cir. 2000)(citations omitted). The bankruptcy court found that "the doctrine of laches does not apply, because only fourteen months have

passed from the Petition Date to the reopening of the Case, and the Creditor has demonstrated no amount of prejudice outside of potentially a few fees." The Debtor moved to reopen the case and avoid Waltrip's lien immediately upon receiving notice of the sheriff's execution sale. That timing is reasonable given the circumstances. Furthermore, from a procedural standpoint, neither the Bankruptcy Code nor the Bankruptcy Rules places any time limit on the filing of a lien avoidance motion. *In re Hall*, 327 B.R. 424, 426 (Bankr. W.D.Mo. 2005). Therefore, we find that the bankruptcy court's conclusion that laches does not apply is not clearly erroneous.

Waltrip cited several cases in support of his position that the payment of his fees and expenses was a prerequisite to reopening the case because he incurred them in reliance upon the belief that the Judicial Lien had survived discharge. *Noble v. Yingling*, 29 B.R. 998 (D. Del. 1983); *In re Oglesby*, 519 B.R. 699 (Bankr. N.D. Ohio 2014). The *Noble* court acknowledges that "[s]ome courts have spoken of conditioning relief to debtor upon payment of the judgment creditor's costs and expenses." *Noble*, 29 B.R. at 1003. In its holding, however, the court did not rule that those expenses must be paid. Rather, it lists a number of factors that the lower court might consider on remand. In the *Oglesby* case, the court did condition granting the debtor's motion to reopen the case on the payment of the attorney's fees and costs incurred by the creditor, but that ruling was made "in light of Debtor's

15

unreasonable delay in pursuing avoidance of Sunrise's lien and the resulting prejudice to Sunrise…." *Oglesby*, 519 B.R. at 707. Here, however, as noted previously, we find no clear error in the bankruptcy court's determination that the Debtor's delay in pursuing the lien avoidance was reasonable, and that Waltrip was not prejudiced as a result.

These cases suggest that the payment of fees is not a condition to reopening the case for lien avoidance, but a determination that is made on a case-by-case basis. At any rate, here Waltrip has no cause for complaint because the Bankruptcy Court gave him 14 days after the date of the Order to file a request for fees and costs, but he failed to avail himself of the opportunity.

## CONCLUSION

For the foregoing reasons, the bankruptcy court judgment is AFFIRMED.

_____