# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1130
_____

In re: Ruby Jeane Sawyers

*Debtor*

-------------------------------

David G. Waltrip, LLC

*Appellant*

v.

Ruby Jeane Sawyers

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit
_____

Submitted: January 14, 2021
Filed: July 2, 2021
_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

David G. Waltrip, LLC ("Waltrip") appeals after the Bankruptcy Appellate Panel affirmed the bankruptcy court's[1] order that fully avoided his judicial lien on Ruby Sawyers's homestead.  We affirm.

## I.  Background

Waltrip sued Sawyers in October 2016 for breach of contract in Missouri state court.  During that litigation, a fire damaged Sawyers's home.  The fire damage was covered under a homeowner's insurance policy, and Sawyers received $132,392.99 from her insurance provider for the sole purpose of restoring and repairing her home. After the fire occurred, Waltrip obtained a consent judgment that gave Waltrip a judicial lien against Sawyers's homestead property[2] in the principal amount of $234,123.31 and a total amount (including interest and costs) as of January 12, 2017, of $256,739.31.

On February 15, 2017 (the "petition date"), Sawyers filed a petition for Chapter 7 bankruptcy protection.  As of the petition date, Sawyers had not repaired her home, and its value was approximately $3,000 to $6,000.  Waltrip filed a proof of claim for the judicial lien and was an active participant in Sawyers's bankruptcy case.

As of the petition date, Sawyers's home was also subject to another consensual mortgage lien to First Community in the amount of $29,376.96.[3] Without objection, Sawyers claimed a homestead exemption under Missouri law for

---

[1]The Honorable Charles E. Rendlen III, United States Bankruptcy Judge for the U.S. Bankruptcy Court for the Eastern District of Missouri, now retired.

[2]Homestead is defined as "consisting of a dwelling house and appurtenances, and the land used in connection therewith." Mo. Ann. Stat. § 513.475.

[3]In her emergency motion to reopen the case, Sawyers states that the consensual mortgage was $50,338.00 on the petition date.

-2-

$15,000.  But, she failed to take the steps to avoid Waltrip's lien under 11 U.S.C. § 522 of the bankruptcy code.  Sawyers's bankruptcy case closed in July 2017.

After Sawyers's bankruptcy case closed, Waltrip tried to enforce his lien by arranging a sheriff's execution sale of Sawyers's home.  In April 2018, Sawyers filed to reopen her bankruptcy case to avoid Waltrip's lien.  The bankruptcy court approved Sawyers's request to reopen her bankruptcy case and granted Sawyers's motion to avoid Waltrip's lien.

Waltrip appealed the bankruptcy court's decision and sought an award of costs and fees resulting from the reopened bankruptcy case.  The bankruptcy appeals panel affirmed the bankruptcy court's ruling, and Waltrip filed this appeal.

## II.   Discussion

As the second court of review, we apply the same standards of review as a district court.  *In re O'Sullivan*, 914 F.3d 1162, 1166 (8th Cir. 2019).  "[W]e review "the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*."  *In re Bowles Sub Parcel A, LLC*, 792 F.3d 897, 901 (8th Cir. 2015) (alteration in original) (quoting *Tri-State Financial, LLC v. First Dakota Nat'l Bank*, 538 F.3d 920, 922 (8th Cir. 2008)).  A bankruptcy court's decision to reopen a case and a bankruptcy court's order denying a party's request to recover costs and fees are reviewed for abuse of discretion.  *In re Apex Oil Co.*, 406 F.3d 538, 541 (8th Cir. 2005); *Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 823 (8th Cir. 2004) ("We review the award of fees for abuse of discretion.").

### A.   Avoiding Judicial Liens

Section 522 of the bankruptcy code allows a debtor to exempt certain property from the bankruptcy estate and avoid a lien that impairs any of its exempted property. *See O'Sullivan*, 914 F.3d at 1166 ("[S]ection 522(f)(1) provides, in relevant part, that 'the debtor may avoid the fixing of a lien on an interest of the debtor in property

to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b) ], if such lien is . . . a judicial lien.'") (alterations in original) (quoting 11 U.S.C. § 522(f)(1)).  "We liberally construe exemption statutes in favor of debtors."  *In re Hardy*, 787 F.3d 1189, 1192 (8th Cir. 2015).

Section 522(f)(1)(a) applies to judicial liens, and it is the debtor's burden to demonstrate that the debtor is entitled to the avoidance of a lien. *See Meseraull v. Rick Miller Constr., Inc.*, 82 F.3d 421, at *2 (8th Cir. 1996) (unpublished) (stating debtor had the burden of establishing that she was entitled to avoid a creditor's lien). To avoid the fixing of a judicial lien on exempted property, a debtor must (1) establish the creation of an avoidable lien under § 522(f)(1); (2) that affixed to exempted property under § 522 (b); and (3) that impaired a debtor's claimed exemption in the property.  *See O'Sullivan*, 914 F.3d at 1166.

Generally, "a debtor is permitted to choose between the scheme of federal exemptions prescribed in section 522(d) of the [bankruptcy code] or the exemptions available under other federal law and the law of the state in which the debtor is domiciled."  *In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007).  One of the many exemptions available to a debtor is the homestead exemption, which allows a debtor to exempt a pre-petition lien levied against its homestead. 11 U.S.C. § 522(b) and (o)(4).  By utilizing the homestead exemption, the debtor is able to shield its homestead from a secured creditor's post-petition collection efforts.  "Missouri has chosen to opt out of § 522(d)'s exemptions, 'thereby restricting Missouri residents to the exemptions available under Missouri law and under federal statutes other than 11 U.S.C. § 522(d).'"  *Benn,* 491 F.3d at 813 (quoting *Wallerstedt v. Sosne (In re Wallerstedt)*, 930 F.2d 630, 631 n. 1 (8th Cir. 1991)); *accord Hardy*, 787 F.3d at 1192 (citing Mo. Rev. Stat. § 513.427).  Under the homestead exemption, Missouri law allows a debtor to exempt $15,000 of home equity from attachment and execution. Mo. Rev. Stat. § 513.475; *accord In re Nguyen*, 332 B.R. 393, 395 (Bankr. W.D. Mo. 2005).

-4-

The parties do not dispute that Waltrip had a valid, avoidable lien that was affixed to Sawyers's property before she filed her bankruptcy petition. Thus, the issues on appeal involve the extent to which Waltrip's lien impairs Sawyers's claimed homestead exemption.

## B. Calculating the Value of a Homestead

The primary issue on appeal is the valuation of Sawyers's homestead. Sawyers's home was lost in a fire prior to Waltrip's judicial lien and before the bankruptcy petition. Waltrip's judicial lien affixed to Sawyers's home approximately two months after the house fire, before Sawyers made any attempts to repair the damaged home. Sawyers filed her bankruptcy petition approximately one month after Waltrip's judicial lien affixed to her property.

On the petition date, an appraisal of Sawyers's property valued her fire-damaged home between $3,000 and $6,000. However, before the petition date, Sawyers received approximately $132,392.99 from her homeowner's insurance provider for home repairs. Waltrip argues that the insurance proceeds Sawyers received to rebuild her home should be included in the bankruptcy court's valuation of the home.

It is well settled that the value of a debtor's homestead is determined based on the property's fair market value as of the petition date. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994) (noting that under bankruptcy code § 522, "'value' means fair market value as of the date of the filing of the petition") (quoting 11 U.S.C. § 522(a)(2)); *In re Kolich*, 328 F.3d 406, 408 (8th Cir. 2003) (using a homestead's fair market value in calculating lien avoidance). To determine fair market value, courts should consider factors "including location of the real estate, condition of the real estate and unique fixtures and attributes of the real estate" when calculating a property's fair market value. *In re Lewis*, 419 B.R. 804, 806 (Bankr. E.D. Mo. 2009). Missouri state courts also rely on the appraisal process to determine

-5-

the value of a homestead. *See Meeks Leasing Co. v. Young*, <u>881 S.W.2d 232, 236</u> (Mo. Ct. App. 1994).

Waltrip fails to cite to any controlling or persuasive authority in support of his argument to depart from this general-fair-market-value rule and, instead, include the insurance payout in the bankruptcy court's valuation of Sawyers's fire-damaged home. All of the cases Waltrip cites are distinguishable. For example, Waltrip relies on *In re Burns*, <u>482 B.R. 164</u> (Bankr. E.D. La. 2012), for the proposition that insurance proceeds can be valued just like home equity during a judicial lien avoidance analysis. *Id*. at 166–68. *Burns* is distinguishable for three reasons: (1) it applied Louisiana, as opposed to Missouri, homestead law; (2) the exemption at issue in the case focused on the debtor's disposable income, not the debtor's homestead; and (3) the "restitution" paid for the debtor's loss of property (in the form of income) came from the settlement of a lawsuit, not the payout of an insurance claim. *Id*. Further, the approach in *Burns* is inconsistent with cases applying Missouri law. For example, a Missouri bankruptcy court has stated that any post-petition increase in a debtor's property value should benefit the debtor. *In re Hall*, <u>327 B.R. 424, 428</u> (Bankr. W.D. Mo. 2005).

Separately, Waltrip cites a Fifth Circuit case for the proposition that insurance proceeds can be substituted for the value of damaged exempt property. *Matter of Swift*, <u>129 F.3d 792, 801</u> (5th Cir. 1997) ("[T]he proceeds, insurance, cause of action, etc., are a substitute for the exempt property that is lost. To be effective, the substitute must be treated as if it were the lost item."). Again, this case is distinguishable because it applied Texas state exemption law, and the exempted property at issue was a debtor's retirement savings account, not a debtor's homestead. *Id*. Similarly, Waltrip's reliance on *In re McDonald,* No. BR 15-00739, <u>2016 WL 1238832</u>, at *2 (Bankr. N.D. Iowa Mar. 29, 2016) (unpublished), is distinguishable because it applied Iowa law and focused on the value of a homestead in the context of a voluntary sale.

-6-

Contrary to Waltrip's position, in a case applying Missouri homestead exemption law, a Missouri bankruptcy court recognized the proposition that a debtor is entitled to retain the full amount of insurance proceeds tied to exempted property. *See In re Shelby*, 232 B.R. 746, 763–64 (Bankr. W.D. Mo. 1999). *Shelby* discusses *In re Snow*, 21 B.R. 598 (Bankr. E.D. Cal. 1982), a case in which a debtor filed a bankruptcy petition, the debtor's home was subsequently damaged by a fire, and the bankruptcy trustee attempted to commandeer the insurance payout to pay bankruptcy debts. *Snow,* 21 B.R. at 601. The *Snow* court stated "[a]ssets properly exempted by a debtor are withdrawn from the bankruptcy estate and title to those exempt assets is vested in the debtor to carry into his fresh start. The bankruptcy estate has no interest whatsoever in exempt assets." *Id.* And,

> [i]n the instant case, the contents of the residence of the Debtor were properly exempted and title had vested in the Debtor before the fire destroyed them. The bankruptcy estate had no interest in those exempt assets. Thus, when these contents were destroyed by fire, the Debtor was the sole owner of the insurance proceeds covering the contents.

*Id*.

Thus, the *Snow* court held that when property is properly exempted under § 522, a debtor is the sole owner of the insurance proceeds covering the property. *Id.* The *Snow* and *Shelby* cases are, of course, distinguishable because neither addresses the issue of lien avoidance. However, as the bankruptcy appellate panel concluded, "the cases on which Waltrip relied do not make a determination as to the valuation of a property interest in an insurance policy or proceeds that would logically apply to the analysis of lien avoidance under §522(f)." *In re Sawyers*, 609 B.R. 331, 336 (B.A.P. 8th Cir. 2019). Furthermore,

> The use of the pre-restoration date to determine value rather than the post-restoration date is not only grounded in law, but simply makes sense. Suppose, for example, that before a debtor files for bankruptcy, her property is destroyed by a fire. The debtor collects the insurance proceeds. If she were to sell the property at this point, she would only

-7-

receive the fair market value of the property, i.e., the value of the "bricks and sticks." It stands to reason that a willing buyer would only pay for the property as it existed on that date, without taking the insurance proceeds into account.

*Id*. at 337.

Without any precedent to support Waltrip's position, we decline to include the amount of the insurance payout when calculating the fair market value of Sawyers's home on the petition date, and we affirm the bankruptcy court's ruling using the $3,000 to $6,000 valuation of the unrepaired, fire-damaged property as determined on the petition date.

### C.    Calculating the Impairment of Sawyers's Homestead Exemption

Under § 522(f), only the portion of a judicial lien that impairs the exemption may be avoided by the debtor. *Kolich*, 328 F.3d at 409 n. 2. Thus, to the extent the debtor has equity in the exempt property that exceeds the allowed bankruptcy exemption, the judicial lien may not be avoided. *Id*. Section 522(f)(2)(A) provides a specific formula for calculating the extent to which a lien impairs a debtor's homestead exemption. 11 U.S.C. § 522(f)(2)(A). The formula is:

The amount of the judicial lien +
The amount of all other liens on the property +
The amount of debtor's homestead exemption absent any liens on property =
**Sum** –
The value of the debtor's interest in the property absent any liens =
**Extent of Impairment**

11 U.S.C. § 522(f)(2)(A); *accord Kolich*, 328 F.3d at 408.

The extent of the impairment is the amount that a creditor's lien will be avoided. *See In re Moore*, 495 B.R. 1, 7 (B.A.P. 8th Cir. 2013).

-8-

The value of Waltrip's judicial lien was $234,123.31.  There was one other lien on Sawyers's property in the amount of $29,376.96.  The value of Sawyers's claimed homestead exemption was $15,000.  *See* Mo. Rev. Stat. § 513.475.  So, the sum of the impairment is $278,500.27.  Based on our earlier determination, the value of Sawyers's interest in the property absent any liens was between $3,000 and $6,000.[4]  Therefore, based on the formula above, the extent of the judicial lien's impairment on Sawyers's homestead ranges between $275,500.27–$272,500.27.

The amount of the judicial lien ($234,123.31) +
The amount of all other liens on the property ($29,376.96) +
The amount of debtor's homestead exemption ($15,000) = $278,500.27
**$278,500.27** –
Minus the value of the debtor's interest in the property ($3,000–$6,000) =
**Extent of Impairment: $275,500.27–$272,500.27**

The extent of the impairment ($275,500.27–$272,500.27) provides the amount of Waltrip's lien that can be avoided.  Because Waltrip's lien is smaller than the extent of the impairment, the entirety of Waltrip's lien can be avoided.  Therefore, we affirm the bankruptcy court's decision to avoid the entirety of Waltrip's lien.

### D. Expenses of Reopening the Bankruptcy Case

Sawyers asserted the homestead exemption during her original bankruptcy case, but she failed to move to avoid Waltrip's lien.  Waltrip briefly argues that

---

[4] If Waltrip's argument prevailed and the amount of the insurance proceeds was included ($132,392.99), the value of the debtor's interest in the property absent any liens would have ranged from approximately $135,392.99–$138,392.99.  Thus, the extent of the impairment would have only been $143,107.28–$140,107.28, and Waltrip's judicial lien would have been reduced to $91,016.03–$94,016.03, instead of being completely avoided.

-9-

Sawyers's motion to avoid Waltrip's judicial lien is untimely, as approximately fourteen months passed between the petition date and the date upon which Sawyers reopened the bankruptcy case. Waltrip also argues that Sawyers should be required to reimburse him for the costs incurred in prosecution of the sheriff's execution sale and those incurred as a result of the reopening of the bankruptcy case. In response, Sawyers argues that Waltrip failed to object to the reopening of the bankruptcy case; therefore, Waltrip has waived any objection to the reopening of the case.

Courts are permitted to reopen bankruptcy matters to obtain relief. *See* 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010. A bankruptcy court must consider the extent to which reopening a bankruptcy case would prejudice a creditor. *In re Cummings*, 172 B.R. 268, 271 (Bankr. W.D. Ark. 1994). And, even if there is prejudice, the court may still move forward with reopening a case if the prejudice can be cured. *Id*. Some courts have allowed debtors to reopen bankruptcy cases to avoid liens that a debtor overlooked and failed to avoid during the pendency of the bankruptcy case. *Id*. at 270.

In the event that a bankruptcy court decides to reopen a matter, it is within the bankruptcy court's discretion to award costs and fees to an impacted party. *See In re Minniear*, 88 B.R. 1005, 1006 (Bankr. W.D. Mo. 1988) (requiring the movant to compensate the nonmovant's time and expenses incurred during the movant's delay in moving for reopening). We review the bankruptcy court's decision for abuse of discretion. *Apex Oil*, 406 F.3d at 541.

In the absence of any objection, it was within the bankruptcy court's discretion to reopen the bankruptcy case to grant relief to Sawyers, as permitted under the bankruptcy code, regardless of the amount of time that had passed since the petition date. Waltrip's failure to object to the reopening of the bankruptcy case effectively waived his arguments about undue prejudice in reopening the case. *See In re Miller Auto. Grp. Inc.*, 536 B.R. 828, 831 (B.A.P. 8th Cir. 2015) (stating that a creditor's objection to a motion to reopen was moot after the court granted the motion). This is particularly true since the bankruptcy court gave him fourteen days after the date

-10-

of the reopening order to file a request for fees and costs, and Waltrip failed to avail himself of this opportunity.  Furthermore, there is no precedent supporting Waltrip's argument that Sawyers is required to pay Waltrip's costs and fees associated with the sheriff's sale or the reopening of the bankruptcy case.  An award of fees is within the bankruptcy court's discretion, and Waltrip has failed to provide any persuasive argument for why denial of his request for fees was an abuse of discretion.  Thus, we will not disturb the bankruptcy court's decision to reopen the bankruptcy case and to deny Waltrip's request for costs and attorney fees.

### III.  Conclusion

The judgment of the bankruptcy court is affirmed.

_____

-11-